I'm Lisa Hoffenjanz on behalf of Appellants. I'm pleased to introduce law student Theodore Van Beek who is going to be presenting argument to the court this morning under my supervision. May it please the court. Theodore Van Beek for the Appellants. This case arises out of at least five days of identified incidents in June and July of 2020 where the police of Florissant unconstitutionally declared assemblies unlawful and unlawfully issued dispersal orders. These protests concerned the conduct of an officer of the Florissant Police Department and his use of excessive force and the conduct of other officers of the Florissant Police Department and their failure to intervene. The police used these unlawful assembly declarations and dispersal orders to shut down peaceful protests in and the First Amendment. But in the district court's view... But there's no individual excess force claim, is there? That's correct, your honor. This is all injunctive relief against only the county. Injunctive declaratory and nominal damages against the municipality, that's correct. The district court's opinion held that the police's power to declare assemblies unlawful and issue dispersal orders was not tethered to Missouri statutes codifying the criminal offenses of unlawful assembly and failure to disperse. That holding, which was not briefed by either party, compounds the already plausible due process and First Amendment violations alleged in the complaint. And what federal case is contrary to that federal appellate decision? For the proposition that... That it doesn't have to be a statutory violation to declare an unlawful assembly. It's not so much that it's impossible to declare an statute in place that says to the citizens, here's what an unlawful assembly is. Okay, but give me your best federal appellate case, Supreme Court or Circuit Court. Well, undergrained against City of Rockford, that kind of decision would trap the innocent by failing to provide fair notice to the citizens of what exactly an unlawful... That's the case that holds that if there's a statute, then that statute must be violated? No, it creates the principles of what required to... You're making an argument that's, frankly to me, off the page. And I have to know if any federal appellate court has ever embraced it. That has not been a direct holding of this circuit or of the Supreme Court. Okay, so you want us to extend or expand the law in that regard? It would not require extending or expanding the law because due process has been applied to unwritten policies or customs, and we're saying that... Now, if we're due process, that brings me to my favorite question. As I read the brief, all civil laws, whether common law or statutory, that authorize the declaration of a public nuisance are void for vagueness. Am I correctly interpreting your position? No, we would not extend the position here to extend a between unlawful assembly and public nuisance from the standpoint of vagueness. Well, first, in this case, because Missouri has defined unlawful assembly through a statute that provides fair notice... I'm talking about a statute that says public nuisance. Well, if it's a statute, there's a presumption that the citizens have read the statute. The allegations in the complaint from paragraphs 49 to 46 are that the police are declaring unlawful assemblies beyond what the statute is saying, and that's what creates... So common law public nuisance for centuries have been unconstitutional in today's United States. No, because there's not a First Amendment right that protects typical common law public nuisance claims, so... Many public nuisance have all involved speech or conduct that is arguably protected. There's a First Amendment interest involved, absolutely, but there's not a First Amendment violation under typical public nuisance. You know, your average public... No, that's because your argument is beyond the... is in the stratosphere. What the unlawful assembly statute allows the police to do is declare an entire assembly unlawful only where six people agree with one more person, so that's seven people total, agree to violate the criminal laws of Missouri of the United States with force or violence. One more question. Do you... If the district court was right on this point, does that mean we affirm? Only in relation to the due process question. The First Amendment claim would still survive because the First Amendment violation is independent of... That relates to the specific... I thought the district court's analysis... That was part of the district court's First Amendment analysis. That the... But the common law, if there is some sort of common law, unlawful assembly power that the police have, it was exercised unconstitutionally here under the First Amendment and those facts... Because there weren't seven people? Because there was no force or violence or agreement of force or violence to violate the civil law, and so... How many declarations of... How many maintenance of public safety and welfare and traffic and so forth have there been without force and violence? Well, the issue there is that there's no question here that, or for the present purposes, the police could ask the protesters to leave the street or leave a specific... I thought they did. I thought that was part of the... Even in the pleading. No, the paragraphs 39 specifically declare that they declared an unlawful assembly. What that allows the police to do is attack every protester regardless of whether or not they were in the street. And so the First Amendment... I thought there were warnings? Of unlawful assembly, and then they ordered them to discourse pursuant to that, yes. Right. But so... But the First Amendment requires a fit between the government's interest and a regulation. Okay, three-court cite for that. So that would be, for example, McClellan against Coakley or NAACP against Claiborne, where the court said that the First Amendment interest needs to have a fit with the regulation that is being enacted or undertaken by the government. And so what the unlawful assembly statute declaration allows the government to do is encapture every protester that's at the protest under state-against-mass-to-state case that defines unlawful assembly instead of just those protesters who were giving rise to the interest that's been asserted by the city. So if there were three or four protesters in the street, for example, an unlawful assembly declaration would allow a protest of a thousand people that were on the sidewalk to be arrested under unlawful assembly or failure to disperse, including the three that were on the street. It's that lack of fit that creates the First Amendment violation here under cases like McClellan against Coakley and under NAACP against Claiborne. As a factual assertion, how does this work? What is your allegation that the officers, when you say declare an unlawful assembly, they have, through whether it be a megaphone or some other means, have declared that the assembly is unlawful? Now the exact form that that declaration takes is not specifically alleged in the complaint, and if that were to be unheard as it's specifically alleged in paragraph 42, for example, or 43, for example, where certain protesters haven't heard the unlawful assembly declaration, that could also create an issue with notice as well. So I'm having trouble following you. Is your suggestion that that would be unconstitutional or unlawful if there was no violation of the two statutes, the underlying Missouri statutes? Under the First Amendment or under the First Amendment? Well, under any of your claims. So that would create a, the tie to the statute is what we use for the due process, the fair notice issue, in that the statute has declared what an unlawful assembly is, and citizens would look to that statute to see what they're allowed to do, and here we've got a customer policy that's alleged of declaring these unlawful assemblies without that statute. So if the statute's not violated, that's the due process claim. It's also a First Amendment violation without the force or violence. Missouri doesn't necessarily have to have an unlawful assembly statute, but unlawful assembly as a declaration that allows the entire assembly to be dispersed, as opposed to individual protesters or groups of people who are doing something wrong, requires some sort of force or violence, because force or violence is well beyond what the First Amendment protects as a matter of first principles. And so long as there isn't that agreement or allegation to engage in force or violence, the government cannot issue the entire assembly to disperse. It can address the conduct of individualized protesters that break the law, whether that's a traffic ordinance that has been passed or something of that nature. And the specific allegations in the complaint are that there was no force or violence here. These were peaceful protests on five separate days that were still declared unlawful, and it's that lack of fit that creates the First Amendment violation. Why doesn't the complaint allege traffic problems? Why isn't there conduct that's alleged in the complaint that would warrant the officers ordering a dispersal? Because as under our view, there is none that would warrant a dispersal or an unlawful assembly statute. Well, the district court said it wasn't tethered, right? Right. So why don't you talk about that a little bit? Well, so for example, under Brandenburg against Ohio and Dijon against Oregon, the Supreme Court said that it's force or violence that allows the entire assembly to be declared unlawful. It's not the auspices of the assembly, it's the purpose of the assembly. So where the purpose of the assembly is to do something violent, and that under the state cases is a reasonable belief of the officer that there's going to be imminent force or violence. So traffic control to begin with is not something that the police can assembly for at all, and so that's why it's not alleged in the complaint. Give me a case that says that. That traffic control is not an assembly that the police can can regulate by all of the, you know, stop blocking traffic. That's the proposition we're asking the court to accept today. Give me a Supreme Court case that even hints at that. Well, we're reading that from three cases. Brandenburg against Ohio, Dijon against Oregon, and NAACP against Claiborne. And which of those involve traffic? None of those cases involve traffic, but they make clear that assemblies are protected unless there is force or violence, and that's where we're reading the first amendment limitation that only with force or violence can the protest be dispersed, because otherwise the government's interest, and this goes to McClellan against Coakley, where the government, when it takes any sort of time, place, and manner restrictions, it needs to be reasonable, and that means that the fit between the interest and the regulation needs to be somewhat tailored, less tailored than strict scrutiny, but still tailored to the interest. And traffic control can be tailored without dispersing the entire assembly. It can be fit by asking the people to leave the street or enforcing the traffic law against them. Arrest the people in the street, but don't arrest the people that are on the sidewalk. What's the difference between a dispersal order and asking people to leave the street? The fact that the police can, and in this case is specifically alleged in paragraph 44, did arrest protesters who were not in the street or in the parking lot in the example of trespass. So only, so if there's a traffic control interest, those protesters who are violating the traffic ordinances should be, that their conduct should be redressed by the police. How about disobeying the command to get off the street or out of the parking lot or whatever? That's different than just assembly arrest. That's an arrest for not complying with a law enforcement directive. Absolutely, and that would be acceptable under the First Amendment, but it's where the government is then imputing that conduct of some protesters who are in a parking lot or not on the street that creates the First Amendment problem in this case. Well, how are we supposed to read that into the complaint when it doesn't allege that? Well, the complaint specifically alleges on paragraph 46 that Tenney Howard was arrested for unlawful assembly, not for traffic violations. Now, it was among other things. It does say among other things, but the specific thing that she was arrested for, as alleged in the complaint, is unlawful assembly and failure to disperse. And 44, for example, alleges that and not in the parking lot at all, were arrested for unlawful assembly or failure to disperse. And that's at the core of our First Amendment complaint. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thanks. you May it please the court. Mr. Hassell. I'd like to pick up on and address Appellant's argument that the First Amendment limits government authority to declare assemblies unlawful and issue dispersal orders in the absence of this threat of imminent, forceful, or violent law-breaking, as they like to call it, the unlawful assembly. They fail to recognize the fundamental First Amendment principle that reasonable time, place, and manner restrictions apply under the First Amendment. And let me preface all my comments by pointing out I've been practicing law over 44 years now. Throughout my entire practice, I have advocated for the First Amendment for journalists, print journalists, and broadcast journalists throughout my career, as well as others who have engaged in First Amendment speaking. In fact, way back when, in the early 80s, long before Mr. Van Beek and others were alive, I taught First Amendment law over at that the students didn't recognize that the First Amendment is not an absolute right to say whatever you want, wherever you want to say it, and whenever you want to say it. Yet, that is exactly what they're arguing here today. Now, as you mentioned, Judge, do I cite you any cases for the proposition that the law enforcement cannot go and address protesters who are protesting in the City of Birmingham back in 1967, which the Supreme Court said we emphatically reject the notion that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct, such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech. I will also cite to you a 1935 case, Hagg v. CIO, which is cited by the appellants for the proposition that you can be out in the street and you can protest down in the street. But what they fail to recognize is way back when in 1935, the court said, the privilege of citizens to use streets or parks for communication may be regulated, it is not absolute, and it must be exercised in subordination to the general comfort and consistence with peace and good order. And they cited McCollum v. Coakley. What that case stands for, and again it's a Supreme Court case 2014, it says we have moreover previously recognized the legitimacy of the government's interest in ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, and protecting property rights. So if we look at the sort of disruption and blocking traffic, and that's part of what your brief is, but what in the complaint is saying that that's what they were doing? I mean, we're still at 12 v. 6 here. I mean, you know, maybe a summary judgment record would show something different, but here, based on just what they have put in their complaint, how does it rise to the level of the type of descriptions that you've just given us? What they allege, Your Honor, in paragraph 39, is the police pushed them, meaning protestors, out of the street in which they were standing. Paragraph 42, police told protestors to back up until they were standing across the street in the parking lot. That's on June 23rd, June 29th, and then on July 5th and 6th, they admit that they were in the parking lot of the police department. And they never... Do you have to make an inference, though, in that it was actually impeding traffic? I mean, there's one thing to be standing sort of on the side of the street, or I don't know, in our town, we've got bike lanes, right? It's still the street, but only bikes can go there. So, and just at this stage, I just wonder if that's taking the inference not in favor of the plaintiff. Those are not inferences in favor of the city, and you can draw whatever inference you want from the allegations in the petition, but the city of Florissant blocked off the streets to vehicular traffic to allow this protest. They don't allege that. They could have, but they don't, and they don't because that's not true. So at least I applaud them for not, for properly alleging that protestors are in the street. The reasonable inference that is they're blocking the streets because there are no allegations to the contrary. Well, let's just, let's say there was, there was nobody there. It's a one driving, just as a factual matter. Not blocked off, but no one driving. Would that be impeding traffic? Maybe is my short answer, and what I say to that, Your Honor, is those are the kind of allegations that they would have to allege. I just had a case with Ms. Hoppenchance in University City in which was alleged that musicians were really not blocking the sidewalk. Those were the allegations, and we had to get into discovery on that matter. In this case, there's no allegation whatsoever that they are not impeding the flow of traffic. In fact, the reasonable inference which this court, using your common sense and experience, can draw is they admit they're blocking the streets, and the, the warnings that were given, which they admit were given, is to get out of the street and move to the parking lot across the street. That's what the allegations are, and you don't have to draw a reasonable inference in favor of the city in order to reach that conclusion. Quite to the contrary, all you have to do is examine the allegations, and I'll pick, I'll use the case of Fry versus the Police Department of Kansas City, which the First Amendment does not entitle a citizen to trespass, block traffic, or create hazards. There's no allegation whatsoever that they were not doing that, and you can draw the inference when you're in the middle of the street. Let me add, Judge, you can take judicial notice of the fact that they were on Highway 67, Lindbergh, a major thoroughfare. It is the longest street in St. Louis County, a longest street in St. Louis County. It is a major thoroughfare, and they are doing it in front of the police station in the largest city in St. Louis County, the city of Florissant. You can take judicial notice of all of that. So you have protesters who are blocking the traffic. There's no allegation that they were not blocking the traffic. It's quite to the contrary. But there's also no allegation that there were. It's sort of a... Well, that's because the plaintiffs, I assume they don't want to admit that they were blocking traffic, although today I heard them arguing that they have every right to block traffic unless they're engaging in violence or things of that nature, which isn't true. What about the trespass aspect of it? The District Court did not, as I understand, really rely so much on that as the alternative, but are you trespassing if you're on public property of the police station, at least before you've been ordered to leave? Is that a trespass? In Ball v. Lincoln, the court said the government, no less than private owner of property, has the power to preserve the property under its control for the use to which it is dedicated. So before they told them to leave, so I'm walking up to the police department, I'm on that property, public property, to report whatever I'm there to report. Before, and they've got in their mind they don't want me there, but until they tell me to leave, that's not a trespass. Yeah, well again, Your Honor, we could argue based upon the facts as to whether or not I'm going on to the property for some purpose other than for which the police station is purpose, but under these facts, I'll take these facts, all right, they're on the police station property. Again, they admit that they were on the police station property. There was a designated, I'm sorry, an allegation of a designated protest zone? There was, Your Honor. So how do we handle that? What were the specifics about where the protest occurred relative to that location? There was a dedicated protest zone. Again, they don't get into it very specifically within the complaint, but there was a grassy area directly in front of the police station before you get to the street, a designated protest zone. That's what the city created. Across the street, there was a parking lot, a vacant parking lot where protesters could protest on the parking lot, and that's when their allegation is they were told to move out of the street to the parking lot. Similarly, there was a designated protest zone that they could participate in. They didn't have to go upon the parking lot of the police station, and clearly they have no right whatsoever to be out in the street blocking the traffic. This court has been consistent in identifying that the protesters cannot say whatever they want, whenever they want, or however they want. That's, again, Fry case, and recently this court in Langford identified that ordinary traffic regulations, Judge, that's what you were alluding to, need not exempt those who wish to engage in expressive activity on public thoroughfares. A group of demonstrators could not insist on the right to cordon off a street and allow no one to pass. That's what this court held in the Langford case, and I'll note that my point of the Supreme Court case is limiting the number of feet away from an abortion clinic protesters can be. But there's cases, that's correct, in order to allow them to carry their message. That's traffic control primarily. That's correct, that's exactly right, and I will note that the Langford opinion was rendered by my friend and law school classmate, Judge Autry, and they cited that frequently when Judge Autry's opinion stood for the proposition that the street, and this court overturned that decision, saying that's not true, and I'll note that that was one protester who refused to leave the street, and as Judge Shelton pointed out, so under their proposition, if it's less than seven, we can order people to leave the street when they are, in fact, blocking traffic. But if it's seven or more, the unlawful assembly statute kicks in, and therefore you cannot order them off of the street unless you have evidence of this common goal to submit to commit violence. But that's not really what the mass case said. Let me bring you back to a question that Judge Kelly, an issue she alluded to, which is of interest to me. We're applying Iqbal, which we're called is, is there authoritative or persuasive opinions out there that discuss when is the, a thinking about an alternative option under the Iqbal opinion invading the rule that we don't draw inferences in favor of the non-moving, of the moving party? Well, certainly Iqbal stands for the proposition that the court passed. No, it's like, but then you get into the, you know, the devil's in the applying details, and here it seems to me the alternative options that were being explored are, well, if they're plausible but favorable to the city, does that, does what case would say that invades the rule 12b6 gospel? In fact, the case would say it's not invading the 12b. What Braden went on to say that in that Supreme Court case, in Iqbal, for example, the Supreme Court concluded that the plaintiff failed to state a claim in light of more likely explanations for the defendant's conduct. It then goes on to say that such a requirement is neither a special rule nor a new one. It is simply a corollary of the basic plausibility of requirements. An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would express, excuse me, expect from lawful conduct in which the defendant is known to have engaged. Let me stop you. We're not talking about inferences that the plaintiffs are urging the court. Plaintiffs are just saying we pled it, we pled it was there was no force or and, you know, that's enough to get by these speculative inferences to the contrary. And Judge Shelp and I suggest to you as well that you don't have to get to this inference, excuse me, this threat of force and violence. The First Amendment is where we start and the First Amendment is clear that you cannot, protesters cannot block off and cordon off an area compelling others to listen to what they have to say. Again, Judge Kelly, with all due respect, it is incumbent upon them to make an allegation of misconduct. In order to make an allegation of misconduct, they've got to allege that their First Amendment rights were violated. All they say is our First Amendment rights were violated because the city can't prove that a hundred plus protesters engaged in the intent to commit violence. In fact, we were peaceful but the court, but Judge Shelp pointed out, you don't need that. It's not tethered to unlawful assembly. The First Amendment says you cannot block the street and the alley. What about the allegations? Weren't there allegations of, I think, some chemical use of chemical weapons? So how does that play into sort of the inferences that we make about plausible alternative reasons for the officers? I suggest, Your Honor, that those kinds of facts would be relevant if this was some kind of claim of excessive force. That's not what we have. What we have is an injunctive action, a declaratory judgment action, saying that the city is prohibited from issuing an order of dispersal unless the city can prove that six or more people gathered together for the purpose of committing violence or other kinds of criminal acts. Would we look at the additional actions that are alleged, the use of chemical sprays, as part of the, I guess, the alleged actions on the part of the defendants from speaking? I mean, isn't that part of it or no? With all due respect, I don't think it is because you still have to get over the first hurdle that we're talking about, pardon the pun, it's related to the First Amendment, which is the police officers, they admit, gave a warning, a five-minute warning, to get out of the street. They then acted because they didn't get out of the street and that's in the allegations. And that's premised, the plaintiff's premise is, that that's because they have an absolute right to protest in the middle of the street or on city property unless, and that's where it fails, as Judge Shelp said, it's not tethered to unlawful assembly. The First Amendment goes much, much further in pointing out that the city has every right to regulate people who are blocking traffic and that's what the allegations are in this petition. Thank you, I'm over my time. Thank you. Thank you, Judge Loken. We agree that the police can enforce traffic laws against protesters who are in the street. What they cannot do is use some protesters being in the street as a basis for arresting protesters who are not in the street. The same is true with trespass. The unlawful assembly allegations are going beyond just getting people out of the street. The allegations in the complaint specifically only alleged that the protesters were in the street when an unlawful assembly was declared once on June 29th. June 23rd, June 27th, July 5th, and July 6th do not specify when the police declared that the assembly was the protesters were in the street. It was just a general unlawful assembly declaration that resulted, as we see in paragraph 44, 46, that the arrest of one of the plaintiffs for unlawful assembly, not for a traffic law, but for unlawful assembly. That's the distinction that creates the constitutional violation. How many of the five incidents involved that? Involve unlawful assembly? What you just said. Well, some people may have been okay arrested, but others were not. The complaint specifically alleges four incidents, June 23rd, 27th, July 5th, and July 6th. That is equal to the number that this court said was acceptable to plead and custom under Monell in Mitchell against Kierfmeyer, the most recent case from this circuit on that issue. And so I'm missing allegations that link a county supervisor to the actions. Under the pleading standard of Monell claims, Doe x Rel Doe against City of Norfolk and Crumpley Patterson against Trinity Lutheran, the 8th Circuit cases on this issue, specificity is not required, and this comes from Leatherman against Tarrant County, the Supreme Court decision. Specificity is not required. All that's required is that there are facts that give rise to the reasonable inference, and the fact that this was right outside the police station and at police were operating in an operation fashion altogether, not just one individual officer as a one-off, gives rise to that inference. Thank you. Very good, thank you. Case has been thoroughly, thoroughly briefed and very well argued and we will take it under advice.